IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMUNITY LOANS OF AMERICA, INC., )<br>)<br>and )<br>)<br>CAROLINA TITLE LOANS, INC. )<br>)<br>Defendants. )<br>) | CIVIL ACTION NO.: 6:22-cv-1000-DCC-JDA<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMAND |

**NATURE OF THE ACTION**

This is an action under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Americans with Disabilities Act of 1990, as amended, to correct unlawful employment practices on the basis of race and disability, and to provide appropriate relief to Shaneka Jenkins ("Jenkins") who was adversely affected by such practices. As pled with greater particularity below, Plaintiff Equal Employment Opportunity Commission ("Commission") alleges that Defendant Community Loans of America, Inc. ("Community Loans") and Defendant Carolina Title Loans, Inc. ("Carolina Title") (collectively "Defendants") engaged in race discrimination when they subjected Ms. Jenkins to a racially hostile work environment because of her race, African American. The Commission further alleges that Defendants discriminated against Ms. Jenkins by failing to provide her with a reasonable accommodation for a disability and that Defendants discriminated against Ms. Jenkins when they discharged her because of her disability, because of her record of a disability, or because they regarded her as disabled.

1

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e-5(f)(1) and (3); Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117; and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the District of South Carolina, Greenville Division.

**PARTIES**

4. The Commission is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII and the ADA, and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3), and by Section 107(a) of the ADA, 42 U.S.C. § 12117(a).

5. Defendant Community Loans, a Georgia corporation, operates affiliated payday and title loan offices in approximately twenty-five (25) states, including the State of South Carolina.

6. At all relevant times, Defendant Community Loans has continuously done business in the State of South Carolina and in the City of Greenville and has continuously had at least fifteen (15) employees.

7. At all relevant times, Defendant Community Loans has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title

2

VII, 42 U.S.C. §§ 2000e(b), (g) and (h), and under Sections 101(5) and (7) of the ADA, 42 U.S.C.§ 12111(5) and (7).

8. At all relevant times, Defendant Community Loans has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

9. Defendant Carolina Title, a South Carolina corporation and wholly owned subsidiary of Defendant Community Loans, provides consumer loans based upon vehicle titles taken as a security interest for a loan.

10. At all relevant times, Defendant Carolina Title has continuously done business in the State of South Carolina and in the City of Greenville and has continuously maintained at least fifteen (15) employees.

11. At all relevant times, Defendant Carolina Title has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h), and under Sections 101(5) and (7) of the ADA, 42 U.S.C.§ 12111(5) and (7).

12. At all relevant times, Defendant Carolina Title has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

**DEFENDANTS FORM AN INTEGRATED ENTERPRISE**

13. At all relevant times, Defendants have operated as an integrated enterprise.

14. Upon information and belief, Defendants have common ownership, management, and financial control.

15. Upon information and belief, Defendants operate out of the same corporate headquarters.

16. Upon information and belief, human resources functions for both Defendants are

handled by the corporate headquarters of Community Loans.

17. Defendants share a common toll-free hotline to receive employee complaints and reports of discrimination.

18. Defendants share employee policies. For example, at the time Ms. Jenkins was employed, Defendant Carolina Title used an employee handbook issued by Defendant Community Loans titled "Community Loans of America Employee Handbook."

19. A single representative responded to the Commission on behalf of both Defendants in defense of the charge of discrimination filed by Ms. Jenkins.

20. Defendant Carolina Title is a wholly-owned subsidiary of Defendant Community Loans.

## ADMINISTRATIVE PROCEDURES

21. More than thirty (30) days prior to the institution of this lawsuit, Ms. Jenkins filed a charge with the Commission alleging violations of Title VII and the ADA by Defendants.

22. Defendants responded to Ms. Jenkins' charge and participated in all aspects of the Commission's administrative investigation.

23. By letter dated February 11, 2021, the Commission notified Defendants that the Commission has reasonable cause to believe that Defendants violated Title VII and the ADA. The Commission invited Defendants to participate in informal methods of conciliation in an attempt to eliminate the unlawful employment practices and secure appropriate relief.

24. The Parties engaged in conciliation but were not able to reach an agreement acceptable to the Commission.

25. By letter dated September 22, 2021, the Commission notified Defendants that conciliation efforts had failed.

26. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

27. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 26 above.

28. On or about August 8, 2019, Defendants hired Ms. Jenkins as a "Title Manager in Training/Sales Representative."

29. Ms. Jenkins began her employment at Defendants' Spartanburg, South Carolina location.

30. Throughout her employment, Ms. Jenkins' duties included assisting customers to apply for loans, evaluating vehicles offered as collateral, taking customer payments in person or over the phone, making phone calls to delinquent customers, and arranging for vehicle repossession.

31. Ms. Jenkins performed nearly all of her duties by telephone or computer while seated at her desk.

32. A few times per month, Ms. Jenkins assessed customer cars offered as collateral. To perform this task, Ms. Jenkins walked outside to the store parking lot, viewed the car's exterior and watched the customer start the car, back it up, and pull it forward. Ms. Jenkins did not enter the car, look under the hood, or open the car doors. These assessments took only a few minutes to complete.

33. About one to two weeks into Ms. Jenkins' employment, Defendants' Area Manager ("Area Manager") re-assigned Ms. Jenkins to work at a Carolina Title store in Greenville, South Carolina.

34. At the Greenville location, Ms. Jenkins worked with one other individual, the

Branch Manager ("Branch Manager").

35. The Branch Manager oversaw the lending operations at the Greenville location but did not have authority to take tangible employment actions relating to Ms. Jenkins.

## COUNT I:
### *Violation of Title VII*
### *Hostile Work Environment Based on Race*

36. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 35 above.

37. From about August 2019 through about September 30, 2019, Defendants engaged in unlawful employment practices at their Greenville, South Carolina facility in violation of Section 703(a) of Title VII, 42 U.S.C. 2000(e)-(2)(a). Specifically, Defendants subjected Ms. Jenkins to unwelcome severe or pervasive racially hostile comments that created a hostile work environment based on Ms. Jenkins' race, African American.

38. From about August 2019 through September 30, 2019, the Branch Manager routinely used racially derogatory language and insults when talking about African American customers.

39. The Branch Manager made the disparaging comments in the presence of and in close physical proximity to Ms. Jenkins.

40. Such remarks include but are not limited to the following:

    a. The Branch Manager routinely used the terms "n***er[s]" or "motherfucking n***er[s]"[1] when speaking about customers;

    b. The Branch Manager stated that she "hate[ed] working with fucking n***ers," "they never pay their bills" and "they tell lies";

---

[1] The use of the word "nigger" or its plural form is denoted as "n***er" or "n***ers."

      c.      On at least one occasion, the Branch Manager ended a phone call with a customer and said, "This fucking n***er is getting on my nerves."

41.    The race-based comments of the Branch Manager were unwelcomed by Ms. Jenkins and offensive to her.

42.    The race-based comments and hostility described herein created a hostile work environment for Ms. Jenkins because of her race, African American.

43.    Ms. Jenkins reported the race-based comments to the Area Manager who directly supervised the Branch Manager.

44.    Ms. Jenkins reported the race-based comments and to a different branch manager who oversaw the Spartanburg location.

45.    Ms. Jenkins attempted to report the race-based comments through Defendants' employee hotline.

46.    Defendants acknowledge that Ms. Jenkins called the hotline.

47.    Defendants did not respond to Ms. Jenkins' calls to the hotline.

48.    Defendants knew or should have known of the Branch Manager's racial hostility and harassment.

49.    Defendants failed to take prompt and effective action to stop the racial harassment.

50.    The racially hostile comments continued until Ms. Jenkins began a leave of absence on or about October 1, 2019.

51.    The practices complained of above have deprived Ms. Jenkins of equal employment opportunities and have otherwise adversely affected her status as an employee, because of her race, African American.

52.    The Branch Manager's racially hostile comments created significant emotional

distress and caused Ms. Jenkins to feel anxious, upset, physically ill, and required her to seek medical treatment.

53.     The unlawful employment practices complained of above were willful and intentional.

54.     The unlawful employment practices complained of above were committed with malice or, at a minimum, with reckless indifference to Ms. Jenkins' federally protected rights.

## COUNT II:
### *Violation of the ADA*
### *Failure to Make Reasonable Accommodation*

55.     The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 54 above.

56.     From about October 2019 through about November 2019, Defendants engaged in unlawful employment practices at their Greenville, South Carolina facility in violation of Section 102 of Title I of the ADA, 42 U.S.C. § 12112(a), when Defendants failed to provide a reasonable accommodation for Ms. Jenkins, a qualified individual with a disability under Section 101(8) of the ADA, 42 U.S.C. § 12102 and 12111(8).

57.     Ms. Jenkins has an impairment, and has a record of an impairment, that substantially limits major life activities of standing and walking.

58.     Ms. Jenkins' impairment is the result of a car accident in 2015 in which she fractured her foot. The injury required a series of corrective surgeries over the next several years.

59.     At all relevant times, Ms. Jenkins was qualified to perform the essential functions of her job with or without a reasonable accommodation.

60.     At all relevant times, Ms. Jenkins performed her job in a manner that met Defendants' legitimate job performance expectations.

61. Around September 2019, Ms. Jenkins notified Defendants' Area Manager of her disability and her need to take leave to undergo a disability-related foot surgery.

62. Ms. Jenkins discussed with the Area Manager that she would need to return with crutches or a wheelchair and keep her foot elevated.

63. Defendants' Area Manager discussed potential accommodations which could be made to allow Ms. Jenkins to return to work in a sedentary position, including moving the cash register and having the Branch Manager perform any car assessments.

64. Defendants' Area Manager approved unpaid leave for Ms. Jenkins to have the surgery.

65. Ms. Jenkins had surgery on October 1, 2019.

66. As of October 18, 2019, Ms. Jenkins was able to drive without restrictions and was using crutches and/or a wheelchair when she needed to get up and move around. Ms. Jenkins' doctor approved Ms. Jenkins to return to work in a sedentary position.

67. On or about October 18, 2019, Ms. Jenkins requested to return to work using crutches or a wheelchair.

68. The request to return to work with crutches and/or a wheelchair was a reasonable request.

69. Defendants denied Ms. Jenkins' October 18, 2019 request to return to work.

70. Defendants informed Ms. Jenkins she could not return to work until she could return without physical restrictions.

71. By refusing to permit Ms. Jenkins to return to work with accommodation, Defendants forced Ms. Jenkins to continue to use leave without pay.

72. On or about October 28, 2019, Defendants' corporate office sent Ms. Jenkins leave

request documents ("leave documents") to complete and return.

73. On or about November 1, 2019, Ms. Jenkins communicated with the Area Manager and again requested to return to work using crutches or a wheelchair.

74. Defendants again denied Ms. Jenkins' request and Ms. Jenkins continued to remain on unpaid leave.

75. On or about November 19, 2019, Ms. Jenkins communicated with the Area Manager concerning questions she had about how to complete the leave documents.

76. On or about November 20, 2019, the Area Manager told Ms. Jenkins he would relay Ms. Jenkins' questions to Defendants' corporate office.

77. On or about November 25, 2019, Defendants terminated Ms. Jenkins' employment.

78. Defendants classified Ms. Jenkins' separation as "job abandonment" claiming that she failed to return to work at the expiration of the unpaid leave and had not completed leave paperwork.

79. Defendants' explanation was pretext for discrimination.

80. Ms. Jenkins' request to return to work with the use of crutches or a wheelchair was reasonable.

81. Allowing Ms. Jenkins to return to work with the use of crutches or a wheelchair would not have posed an undue hardship for Defendants.

82. The practices complained of above have deprived Ms. Jenkins of equal employment opportunities and have otherwise adversely affected her status as an employee because of her disability or her record of a disability.

83. The practices complained of above created significant emotional distress and caused Ms. Jenkins to feel anxious, upset, physically ill, and required her to seek medical

treatment.

84. The unlawful employment practices complained of above were intentional.

85. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Jenkins.

**COUNT III:**
*Violation of the ADA*
*Unlawful Discharge Based on a Disability*

86. The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 85 above.

87. The termination of Ms. Jenkins' employment was because of her disability.

88. Alternatively, the termination of Ms. Jenkins' employment was because Defendants regarded Ms. Jenkins as an individual with a disability.

89. The practices complained of above have deprived Ms. Jenkins of equal employment opportunities and have otherwise adversely affected her status as an employee because of her disability or her record of a disability.

90. The practices complained of above have deprived Ms. Jenkins of equal employment opportunities and have otherwise adversely affected her status as an employee because Defendants regarded her as disabled.

91. The practices complained of above created significant emotional distress and caused Ms. Jenkins to feel anxious, upset, physically ill, and required her to seek medical treatment.

92. The unlawful employment practices complained of above were intentional.

93. The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Jenkins.

## COUNT IV:
*Violation of the ADA*
*100% Healed Policy*

94.     The Commission realleges and incorporates by reference the allegations set forth in paragraphs 1 through 93 above.

95.     Upon information and belief, Defendants' policy is that employees must be 100% healed before they can return to work from medical leave.

96.     The application of a 100% healed policy or practice is against public policy and violates the ADA.

97.     Defendants applied the 100% healed policy to Ms. Jenkins, thereby depriving her of her right under the ADA to return to work with a reasonable accommodation.

99      The practices complained of above have deprived Ms. Jenkins of equal employment opportunities and have otherwise adversely affected her status as an employee because of her disability or her record of a disability.

100.    The practices complained of above have deprived Ms. Jenkins of equal employment opportunities and have otherwise adversely affected her status as an employee because Defendants regarded her as disabled.

101.    The practices complained of above created significant emotional distress and caused Ms. Jenkins to feel anxious, upset, physically ill, and required her to seek medical treatment.

102.    The unlawful employment practices complained of above were intentional.

103.    The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally protected rights of Ms. Jenkins.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from maintaining a racially hostile work environment.

B. Grant a permanent injunction enjoining Defendants, their officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination based on disability, including their perception of an individual as disabled.

C. Order Defendants to institute and carry out policies, practices, and programs which provide equal employment opportunities for African Americans, disabled persons, and for persons who engage in protected opposition under Title VII and the ADA, and which eradicate the effects of past and present unlawful employment practices.

D. Order Defendants to make Shaneka Jenkins whole by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, front pay.

E. Order Defendants to make Shaneka Jenkins whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

F. Order Defendants to make Shaneka Jenkins whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of above, including, but not limited to, emotional suffering, inconvenience, humiliation, loss of enjoyment of life, loss of self-esteem and loss of civil rights, in amounts to be determined at trial.

      G.      Order Defendants to pay to Shaneka Jenkins punitive damages for their willful, malicious and/or reckless conduct, as described above, in amounts to be determined at trial.

      H.      Grant such further relief as necessary and proper in the public interest.

      I.      Award the Commission its costs of this action.

## **JURY TRIAL DEMAND**

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted this 24th day of March 2022.

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION

CHRISTOPHER LAGE
Deputy General Counsel
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
131 M Street, NE
Washington, D.C. 20507

GWENDOLYN YOUNG REAMS
Associate General Counsel

MELINDA C. DUGAS
Regional Attorney

YLDA M. KOPKA
Supervisory Trial Attorney

NICHOLAS WOLFMEYER
Trial Attorney
Charlotte District Office
129 W. Trade St., Suite 400
Charlotte, North Carolina 28202
Tel: (704) 909-5623
Email: nicholas.wolfmeyer@eeoc.gov

s/ *Mary Kate Littlejohn*
MARY K. LITTLEJOHN, Trial Attorney
South Carolina Federal Bar No. 13690
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION

        Greenville Local Office
        301 N. Main Street, Suite 1402
        Greenville, South Carolina 29601
        Telephone: (864) 565-0353
        Facsimile: (864) 241-4416
        Email: mary.littlejohn@eeoc.gov

        **ATTORNEYS FOR PLAINTIFF**