1

| | |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | FOR THE |
| 3 | DISTRICT OF SOUTH CAROLINA |
| 4 | GREENVILLE DIVISION |

```
 5   * * * * * * * * * * * * * * *
     EQUAL EMPLOYMENT OPPORTUNITY* CIVIL NO. 6:22-CV-01000
 6   COMMISSION,                 * MARCH 21, 2023 10:35 A.M.
                   Plaintiff,   * STATUS CONFERENCE HEARING
 7                               *
     vs.                         *
 8                               *
     COMMUNITY LOANS OF AMERICA  * Before:
 9   INC., ET AL.,               * JACQUELYN D. AUSTIN
                                 * UNITED STATES MAGISTRATE JUDGE
10              Defendants.      * DISTRICT OF SOUTH CAROLINA
     * * * * * * * * * * * * * * *
11   APPEARANCES:

12

13   For the Plaintiff:      NICHOLAS R. WOLFMEYER, ESQUIRE
                             EMILY JUNE COUCH MALONEY, ESQUIRE
                             Equal Employment Opportunity Commission
14                           129 W Trade Street, Suite 400
                             Charlotte, NC  28202
15
                             MARY KATHERINE LITTLEJOHN, ESQUIRE
16                           Equal Employment Opportunity Commission
                             301 N Main Street, Suite 1402
17                           Greenville, SC  29601

18   For Defendant Community Loans of America, Inc., et al.:

19                           DONALD RANDLE MOODY, II, ESQUIRE
                             FRANK STERN, ESQUIRE
20                           Jackson Lewis, PC
                             15 South Main Street, Suite 700
21                           Greenville, SC  29601

22   Court Reporter:         Michele E. Becker, RMR, CRR, RPR
                             201 Magnolia Street
23                           Spartanburg, SC  29306
                             (864) 905-8888
24
     Proceedings recorded by mechanical stenography, transcript
25   produced by computer.
```

1                    P R O C E E D I N G S

2    (Court convened at 10:41 a.m.)

3              THE COURT:  You may be seated.  Good morning.

4         MR. WOLFMEYER:  Good morning.

5         MR. MOODY:  Good morning, Your Honor.

6              THE COURT:  How are you-all?  Good morning.  So, we

7    are here today in Case Number 22-1000, EEOC versus Community

8    Loans of America, et al.  And so I know this is called a Rule

9    16 conference, but it's more like a status conference, I

10   believe.  So what I wanted to do was start with the EEOC and

11   kind of go through some of the issues that you raised in your

12   letter to me from March 14th.  So whoever wants to speak is

13   fine.

14             MR. WOLFMEYER:  Thank you, Your Honor.  Would you

15   like me to stand?

16             THE COURT:  You don't have to.  If you could pull

17   the microphone closer to make sure we hear you.

18             MR. WOLFMEYER:  Good morning, Your Honor.  May it

19   please the Court.  The EEOC requested this hearing.  This is a

20   case regarding -- in which the EEOC alleges that the claimant

21   was subjected to racial harassment and the Defendants have a

22   hundred percent HEAL-ed policy.  The EEOC also alleges that

23   they're an integrated enterprise or a single employer.  We

24   requested this status conference for the purposes of

25   eliminating some of the issues and not burdening the Court

1   with multiple motions that we have not been able to work out,

2   unfortunately, with the Defendants.

3          The first one -- I'll just go right down the list.

4   And feel free to stop me if you need clarification.

5          **THE COURT:**  Okay.

6          **MR. WOLFMEYER:**  The first one is that we are still

7   looking for dates for the 30(b)(6) depositions.  We've been

8   working with Defendants on topics.  We've narrowed them down

9   quite a bit, but at this point as you may know the discovery

10  deadline passed on March 16th.  We filed a consent motion with

11  them to extend it another 60 days, but even to meet that

12  deadline we're going to need to get things scheduled pretty

13  soon.

14         **THE COURT:**  Let me talk to the Defendants about the

15  30(b)(6) deposition dates.

16         **MR. WOLFMEYER:**  Sure.

17         **THE COURT:**  Don't let me put words in your mouth,

18  but I'm assuming you haven't scheduled the dates because

19  you're trying to resolve topic issues; is that correct?

20         **MR. MOODY:**  Yes, Judge Austin.  And if I may stand?

21  I'm more comfortable standing.

22         **THE COURT:**  Sure.

23         **MR. MOODY:**  Judge, I will tell you that we have many

24  cases here in the District because this is our home where we

25  deal with pro hoc issues and folks that don't know how we do

4

1    things locally.  And I've tried to work with Mr. Wolfmeyer and

2    the Government and the Charlotte office to say, 30(b)(6)

3    issues, we have to confer.  The Rule requires that.  You give

4    us the topics, we go find the people or educate the people so

5    that we can present a witness.  We communicated this with them

6    and I said all along, this is typically how we do things here.

7    And, you know, we're South Carolina, whatever.  But we work

8    collegially and work together and we don't file motions.

9         I sent that email I think on January 11th saying we

10    need to meet and confer about topics.  Judge, we've had no

11    less than I think three conversations about their topics.

12    They sent us two notices that are identical -- I sound like

13    "My Cousin Vinny" -- for both companies, and they were 45 to

14    46 topics.  I had this in another case in Columbia with

15    Judge Hodges.  And I told them, I said, Judge Hodges

16    admonished the other side.  Said, you've sent a deposition

17    outline.  There's no reason to have to present witnesses on

18    this.  And I know they're being careful.  They say, well, we

19    want to make sure the fact witnesses are covered and all that

20    kind of stuff.  So, you can put words in my mouth because that

21    is exactly what happened.  We have narrowed things down.

22         **THE COURT:**  Right.

23         **MR. MOODY:**  And as far as this integrated enterprise

24    issue.  Like the last five, seven, six, eight, I don't know,

25    topics, deal with this integrated enterprise issue.  And we

1  had a phone call.  And I apologize.  Time kind of is hazy

2  because two weekends ago my brother had a heart attack, so

3  I've been in the hospital.  So things have been fuzzy for me.

4  And I said what is the purpose of these last seven to eight

5  topics.  And they said, integrated enterprise.  I said, well,

6  just tell us.  We may stipulate to some of this stuff to move

7  things along.  So, we are still trying to get those topics

8  narrowed.  And once we get that we will identify witnesses.

9  Which go to a couple of next ones, like Lori Griffin.  Lori

10 Griffin may be a fact witness that they want her as a fact

11 witness, but we think she's going to be a witness for

12 30(b)(6).  And it is routine to present a witness, say here

13 are the 30(b)(6) topics she's presented for, and then go ask

14 her whatever fact questions.

15        Karen James.  Karen James has been to town to be

16 deposed at 1:00 or 2:00 one day, and they went so long with

17 Wally Williams that poor Ms. James was sitting at her office

18 waiting to be deposed, and I took her to lunch just because

19 she's a witness in the bullpen.  And finally they were talking

20 about starting her at four, five or 6:00 at night.  I said,

21 no.  This woman drove from Statesboro, Georgia, has family

22 coming to town tonight.  She gets to go home.  So Karen James

23 has been to town to be deposed, and because they took so long

24 with another witness we sent her home.

25        So, a lot of this -- I know they're being

1    protective.  They don't want to be prejudiced.  But I've told

2    them that this Court in this District knows we're working, and

3    everybody is pushing.  But when they send 30(b)(6) topics that

4    are so wide ranging and we still haven't agreed to what they

5    are, we can't go bring witnesses.

6              THE COURT:  Right.

7              MR. MOODY:  So that's the big issue there, Judge.

8    And I'm sorry to be so long winded, but I think that disposes

9    of a lot of this conference.

10              MR. WOLFMEYER:  Your Honor, may I respond?

11              THE COURT:  Yes.

12              MR. WOLFMEYER:  With regards to the 30(b)(6) since

13    that's come up repeatedly in opposing counsel's statement, we

14    have communicated with them 12 times regarding setting

15    30(b)(6) depositions going back to October 28th.  I have those

16    communications here if you'd like to see them.  If not that's

17    fine as well.  We originally noticed the depositions on

18    February 3rd, which was -- and we noticed the topics on

19    January 24th.  We've had multiple conversations on those

20    topics.  After noticing those initially on February 3rd, we

21    got a motion filed three days before the depositions.  That

22    included a fact witness, Lori Griffin, and that, you know, as

23    far as we know we don't know who they're going to present for

24    30(b)(6).  We did present an extensive list of topics, about

25    35 or 40 for each defendant.  And that's because at this point

1   based on a lot of, you know, the request for production, which

2   I also outlined, we don't know which of their people

3   controlled the decisions, who the decision-makers were, which

4   companies they work for.  So of course they're going to be

5   identical.

6           And in Defendant's motion they bring up the list of

7   topics, and a number of them -- and also quote the case law

8   which talks about painstaking particularity.  And when we're

9   being painstakingly particular, we're going to have a separate

10  topic for training on sexual harassment, or sorry, it's

11  training on racial harassment for this witness -- for this

12  person, I'm sorry, and also for this person who's also a

13  decision-maker.  So that might be three topics out of the 35.

14  Really it's one.  But we're being painstakingly particular.

15  We've worked with these Defendants multiple times.  We've had

16  a lot of conversations.  And a lot of these last few issues do

17  boil down to integrated enterprise.

18          Yesterday at 4:00, approximately 4:00, we got an

19  offer of some factual stipulations toward this issue to

20  resolve the issue.  At this point we're still considering

21  those.  But at this point because that's such a factually

22  intensive inquiry, you know, getting a couple stipulations as

23  to facts on the ownership or maybe some management of certain

24  employees, we don't know that that's going to establish

25  sufficiently for purpose of summary judgment, or judgment, or

1    potentially even for appeal, a fact that this is a single

2    employer.  And he's right, that would resolve a lot of these

3    issues.

4           **THE COURT:**  Okay.  And you've got that, and you're

5    taking that into consideration; is that accurate?

6           **MR. WOLFMEYER:**  We are.

7           **THE COURT:**  Okay.  Let me ask about the -- well,

8    Defendants not having provided a mediation date.  We're going

9    to extend the scheduling order.  That's probably not going to

10   be an issue, correct?

11          **MR. MOODY:**  No, Your Honor.  In fact, I think we've

12   agreed that Mark Bakker can be the mediator.  I think they

13   want Carl Folkens.  And if Mr. Folkens wants to come from

14   Florence to mediate, that's fine.  My whole issue there is we

15   can't have a mediation -- I represent companies.  Mr. Stern

16   represents companies.  They're not going to come to a

17   mediation where everything has not been closed out.  So, I've

18   reached out to Mr. Bakker's office, Mr. Folkens' office.  I

19   believe they have as well.  So they know that we want to

20   schedule a mediation and we were looking at April dates and

21   hopefully we can accomplish those dates.  If not we will get

22   on their calendar as well.  So, I mean, this whole "not

23   provided dates for mediation" that's, you know, we've done a

24   whole lot there, and I don't believe that captures what we've

25   done, Judge.

1       **THE COURT:**  Right.  So you would still try to do

2    mediation in April even with the amended scheduling order?

3       **MR. MOODY:**  We will do mediation when our client is

4    able to talk to us, understand what's at play.  I don't want

5    to do -- Randy Moody doesn't want to do a mediation and a

6    client goes, well, what about this, Randy.  So we want to come

7    to mediation and if it's possible to close the case, close the

8    case.  So if that's April, great.  If it's in May, that's fine

9    too.  But one of the struggles I've had is they want to

10   schedule stuff without it being ready.  And it's always like,

11   you know, agree to this date and if you don't tell me by the

12   close of business tomorrow, we're noticing it.  It's almost

13   like blind noticing.  And I'm like, work with us here, you

14   know.  Things are moving but we are happy to meditate the case

15   as long as it's ready to be mediated.

16       **MR. WOLFMEYER:**  Can I just briefly correct the

17   record.  So, we have since July 1st of last year, we've tried

18   to set up mediation dates according with the scheduling order

19   initially provided in this case.  What you heard opposing

20   counsel say is -- really what he didn't say is, he said he did

21   not commit that they would have scheduled mediation in April.

22   He said he would do it when they were ready.  Those are the

23   same type of responses we've had in six different

24   conversations about this.

25       **THE COURT:**  Well, I can understand not wanting to go

1  to mediation until you've got your discovery.  I mean, I

2  practiced for 13 years.  I could not get a client to go to

3  mediation if I hadn't done the discovery and done my

4  groundwork on where their case stood, what the issues were,

5  what their strengths and weaknesses were, you know, if it was

6  going to be reasonable for them to go, go to mediation.  So I

7  can understand that.  So, lets --

8           MR. WOLFMEYER:  Can I just say one more thing?

9           THE COURT:  I'm thinking about granting the motion

10  to amend the scheduling order, so you'll have a mediation

11  deadline.  What I'm concerned about is getting this case

12  moving so that you-all can have discovery done in a time where

13  mediation is practical in July or whenever you-all have it,

14  May.

15           MR. MOODY:  Your Honor, it's my understanding --

16  again, I was a little bit dark during my brother's situation.

17  Mr. Stern has said they wanted the mediation deadline to

18  happen before discovery closed, and that's just not how we

19  normally do it with the Courts.  But that's something we

20  yielded because they asked for it.  But we would prefer to

21  have discovery closed and mediation as Your Honor's normal

22  scheduling orders.

23           THE COURT:  Yeah.  That's typically what I require.

24  I require discovery be completed before mediation.

25           MR. WOLFMEYER:  Just for the record, it was

1    Defendant's suggestion that we keep the mediation date.  All

2    of those dates are their dates.  And they suggested meditating

3    before discovery closed.  That was not our suggestion.

4            **THE COURT:**  Okay.  And local counsel?

5            **MS. LITTLEJOHN:**  Kate Littlejohn, Your Honor.

6            **THE COURT:**  Yes, ma'am.  Are you involved in this?

7    I mean, you're local counsel.  You know how things should

8    operate in the Court here, so I'm going to put the

9    responsibility on you to make sure that EEOC understands how

10   things operate here.

11           **MS. MALONEY:**  And Your Honor, I appreciate that.

12   And we work, you know, as a team collaboratively.  You know,

13   obviously in this day and age we talk regularly.  I would just

14   echo what counsel has said about our repeated communication.

15   I would liken the communication we received to gaslighting.  I

16   mean, it's when you reach out to someone 12 times to confer

17   and then you're accused of not conferring, that's exactly

18   gaslighting.  And so this is what we are trying to resolve

19   here, we're trying to be collegial, trying to work together.

20           **THE COURT:**  Right.

21           **MS. LITTLEJOHN:**  And we do that.  We're here to do

22   that.  We just filed the motion.  So, yes, I will do that,

23   Your Honor.  I appreciate it.

24           **THE COURT:**  I appreciate it.  Let's see.  So if

25   you-all can agree on the discovery deadline, we will use our

1    calculator to calculate the rest of the deadlines.  So, I'll

2    leave that in your court.  You-all agree on when you believe

3    discovery -- how much time you need to complete discovery.

4               So the EEOC is saying that the Defendants have not

5    produced documents in response to their second request for

6    production.  Is that still outstanding as well?

7               **MR. WOLFMEYER:**  Yes, Your Honor.

8               **THE COURT:**  Okay.

9               **MR. STERN:**  Your Honor, I would just address that a

10   lot of those topics deal with the integrated enterprise.  And

11   many of those topics too were requested -- the documents were

12   requested in the first request for production that we objected

13   to that they then waited past 21 days and simply sent new

14   requests.  So we filed the same objections in response.  So, I

15   mean, we have responded to them with objections.

16              **MR. WOLFMEYER:**  Again, the requests were different.

17   We've requested operating statements, articles of

18   incorporation, things that go towards integrated enterprise.

19   And this is obviously in anticipation toward the 30(b)(6)

20   conference which is yet to be scheduled.  They're not the

21   same.  That's all I can say.

22              **THE COURT:**  So are they past due?

23              **MR. WOLFMEYER:**  These responses are past due.

24   Defendants at this point have given us -- we're going to try

25   to work it out to March 31st, and at that point we'll file a

1 motion to compel.

2      **MR. STERN:**  Your Honor, those responses -- I

3 responded timely to his discovery request.  They're not past

4 due.

5      **THE COURT:**  Okay.

6      **MR. WOLFMEYER:**  To correct the record, he -- they

7 responded on March 6th.  At this point with the, again, the

8 motion to compel you have 21 days.  That's been extended till

9 the 31st.  So you're correct.  I'm sorry, Mr. Stern.

10      **THE COURT:**  Okay.  So, have you-all discussed the

11 objections at all?

12      **MR. STERN:**  I think the objections go -- so my hope,

13 Your Honor, is that we're able to come to an agreement on

14 the -- and the joint stipulation goes to the integrated

15 enterprise.  My hope is that we can, you know, eliminate

16 multiple topics, discovery requests by agreeing to facts which

17 show the integrated enterprise and hopefully can eliminate,

18 you know, questions, topics, requests there.

19      **THE COURT:**  Okay.  So, if it comes to a point where

20 you need to file a motion to compel, if you could let me know

21 first so that we can get together and try to resolve them.

22 Yes, sir.

23      **MR. MOODY:**  Thank you, Judge Austin.  One thing that

24 I do want to make sure that the Court has a little visibility

25 to, the Plaintiff was deposed last Thursday on the 16th.

1    Mr. Stern took that deposition.  There were a couple of things

2    that concerned us.  And we're not ones to squawk or file

3    motions.  You know that.  But one of the issues we've

4    experienced here is the EEOC and whether Shenaka Jenkins is

5    our client and what the status of that is because that's news

6    to us.  We've just never really dealt with that.  We sent a

7    medical authorization.  She nor the EEOC would execute that

8    medical authorization because she has, you know, claims of

9    damages.  We did -- Mr. Stern with Mr. Wolfmeyer, maybe others

10   of their team, agreed that the EEOC could subpoena providers,

11   get that information and then provide it to us.  Unfortunately

12   we are not sure that all of the providers were subpoenaed,

13   number one.

14          We did not receive the information prior to her

15   deposition.  They supplemented a lot prior to her deposition

16   the evening before.  So there may be an issue where we need to

17   reopen and/or we may need the Court's assistance on a medical

18   authorization if she's going to claim these damages to ensure

19   that we've covered the landscape, because as lawyers for the

20   company, you know, obviously we're trying to look out for

21   ourselves and we're trusting the government and Ms. Jenkins.

22   But after her deposition, we're not real confident about that

23   because she pled the Fifth on a lot of things as well.  So

24   that is kind of one footnote or item that I do want to mention

25   to this Court.  So if something develops in the coming weeks,

1    I didn't want to surprise you as we were working through that

2    issue as well.

3         THE COURT:  Okay.  And Mr. Wolfmeyer, on the motion

4    to compel, if you-all are talking about the, you know, as you

5    talk about the production and you don't believe the issue has

6    been resolved with respect to their objections, if you can

7    file another status report with the Court, and I'll say by the

8    30th, by March 30th.

9         MR. WOLFMEYER:  Yes, Your Honor.

10        THE COURT:  Then we'll go from there on that issue.

11        Okay.  I think -- have we covered everything in the

12   letter?  Anything else in the letter we need to address?

13        MR. WOLFMEYER:  The last thing would be, we -- as

14   opposing counsel mentioned earlier, we had noticed two

15   depositions for one day.  Defendants did not want to leave the

16   deposition open and start at 3:00.  So we agreed to reschedule

17   that.  We're in the process of rescheduling that with

18   Defendants.  It's just there so the Court's aware of it.

19        THE COURT:  Okay.  And with respect to rescheduling

20   the depositions, if you-all can confer about that as well and

21   provide a status report to the Court.  I'll give you until the

22   27th on whether or not dates have been selected for those,

23   which takes us to the topics.  So March 27th regarding depo

24   dates.

25        Okay.  So, I'm not sure who filed this status report

1    that I got this morning.

2          **MR. STERN:**  I think that was me, Your Honor, Frank

3    Stern.

4          **THE COURT:**  So, Mr. Stern, let's go to topics 37, 38

5    and 39.

6          **MR. STERN:**  Your Honor, I don't have those in front

7    of me, but I'm aware of the substance of those topics.

8          **THE COURT:**  Okay.  So, 37, 38 and 39, I'm not going

9    to put words in your mouth, but I think those go to the

10   integrated employer -- integrated employer issue, correct?

11         **MR. WOLFMEYER:**  That's correct, Your Honor.  That's

12   correct.

13         **THE COURT:**  Okay.  So, let me ask Mr. Wolfmeyer, so

14   if you -- if they provide or they provide someone who can

15   testify as to the corporate structure, subsidiaries, and

16   owners of the Defendants, would that cover all three topics?

17         **MR. WOLFMEYER:**  For 37 through 39, yes, it would.

18         **THE COURT:**  Okay.  Do the Defendants have anyone who

19   can discuss those issues?

20         **MR. STERN:**  Your Honor, I believe we do.  One of

21   the, you know, objections is the fact that this company

22   operates, you know, I don't know the exact number, but a lot

23   of subsidiaries across the country.  And, you know, if we have

24   someone who can just discuss the basic structure.  But asking

25   someone, you know, this subsidiary in Montana, it has a branch

1    there.  But the problem that we keep running into is the

2    breadth of these topics.  So what we would hope to do, and I

3    think that we have attempted to stipulate that here is the

4    corporate structure, you know, the CLAs, community loans in

5    this case operates and, you know, provides management

6    services, and that's kind of the substance of our stipulation

7    in a hope that we don't have to further object to provide

8    someone on that topic that I'm not sure that we could even

9    find someone who could really testify to that very broad topic

10   due to the nature of the company.

11             **THE COURT:**  How broad is the EEOC looking to go on

12   this based on the claims brought in this case?

13             **MR. WOLFMEYER:**  So -- I'm sorry, were you done

14   talking?

15             **THE COURT:**  Go ahead.

16             **MR. WOLFMEYER:**  So, as far as corporate structure,

17   they've stated that they have other subsidiaries.  We've had

18   depositions.  I think we're up to ten to 12.  Really it boils

19   down to two things, are they an integrated employer, and do

20   they have more than 500 employees.  That's all it boils down

21   to.

22             One of their deponents did talk about I think a

23   Montana organization.  We're not concerned with what happens

24   with that.  Really we want to know how many employees they

25   have and how integrated they are.

1          **THE COURT:**  Okay.  Is there an -- easier may not be

2     the right word.  Is there a more efficient way to get that

3     information?  I mean, without asking them to provide you

4     information on -- it sounds like you're asking about every

5     subsidiary, every affiliate company --

6          **MR. WOLFMEYER:**  Right.

7          **THE COURT:**  -- that's associated with this, I guess

8     with the main company, Community Loans?

9          **MR. WOLFMEYER:**  Right.  So, the claimant in this

10    case worked for Carolina Title Loans.  All of the management

11    worked for Community Loans of America.  Community Loans is the

12    parent company from what we understand.  As far as the

13    corporate structure, what we're looking for there is just the

14    management, who are they, you know -- we go to the elements,

15    right?  Integration -- excuse me, interrelation of operations

16    and also shared labor relations.  Those are the issues that

17    we're looking at in particular on that subject.

18         **THE COURT:**  Okay.  Is that in between just Community

19    Loans of America and Community Title Loans, or between

20    Community Loans of America and anyone else that they have?

21         **MR. WOLFMEYER:**  Right.

22         **THE COURT:**  A relationship with -- I guess that's

23    where I'm confused.

24         **MR. WOLFMEYER:**  I understand.  So, to clear up the

25    confusion, at the -- when these were drafted and then edited

1    to narrow the topics, we did not -- at the time Defendants had

2    indicated that one of the companies had about 150 employees.

3    The other about 200.  And the latest deposition we have a

4    division vice president say he managed over 600 employees, and

5    there was three other division vice presidents at the time.

6    So, if there ends up being a stipulation that there is over

7    500 employees, we don't have any other questions about any

8    other employer other than Carolina Title Loans or Community

9    Loan.

10           **THE COURT:**  Yes, sir.

11           **MR. MOODY:**  Your Honor, thank you.  And Mr. Stern

12   may want to add onto this because he's been handling it more

13   so than I have.  I think we've offered to stipulate that

14   there's more than 500 employees, and that's a more efficient

15   way as the Court has indicated.  And I would add, I've asked

16   what is the EEOC trying to do.  Are you asking for nationwide

17   relief, et cetera.  Mr. Wolfmeyer, in one of our recent

18   conversations said, no, Randy.  So we've had the same concerns

19   and questions the Court had, and we're getting there, but it's

20   been a process.

21           I would add, Judge, that Carolina Title Loans like

22   many other businesses was greatly affected by COVID.  They

23   have storefronts.  Ms. Jenkins worked for a brief period of

24   time at the one on Pleasantburg.  That has now gone dark.  One

25   of the unique aspects of this case that troubles us as the

1   Defendant is that each one of the storefronts are staffed by

2   two people.  I mean, two people.  And their disability claims

3   come from a wreck that she had prior to being employed by us.

4   And then she went out and never completed leave paperwork.  So

5   this disability stuff, all that, the uniqueness here is it's

6   small storefronts.  And that's why we've been trying to find

7   out why are we doing all this organization stuff.  So, I think

8   we've stipulated to the 500 or more.  Whatever other stuff

9   hopefully we can resolve as well so that we can dispose all

10   those topics.

11          **MR. STERN:**  Your Honor, I would just say that

12   their -- you know, what Mr. Wolfmeyer and I worked out is we,

13   you know, on the phone before I sent him the joint stipulation

14   or the proposed from our side and said that, you know, here

15   are the elements of the integrated enterprise, you know,

16   interrelation of operations.  Well, it's difficult to actually

17   write out, "these operations are interrelated without".  So we

18   put in, you know, that CLA provides management services, legal

19   services, payroll, and those types of services to Carolina

20   Title Loans.  And I think that, you know, my hope is that they

21   would agree that that is sufficient to establish what they

22   want to establish instead of just saying, no, that's not

23   enough, we still want to do topics on this because we don't

24   think that that's good enough.  But we basically stipulated to

25   all of the factors there and stipulated finally to the 500

1  employees.

2          THE COURT:  Okay.  So what I'll ask the EEOC to do

3  is to look at the stipulation to see if that resolves your

4  ability to establish those elements if this case were to go to

5  trial.  I'm not handling your case for you, so I don't want to

6  tell you that that should be enough.

7          MR. WOLFMEYER:  I can respond, Your Honor.

8          THE COURT:  It might not be, so...

9          MR. WOLFMEYER:  I can respond in part at this time.

10 So yesterday at 4:00 we received these stipulations of factual

11 things.  If the stipulation is at this point that they have

12 more than 500 employees, with Your Honor's questions about

13 answering questions about all our subsidiaries and affiliated,

14 we can stop that right now if that's the stipulation, if they

15 are willing to offer that and accept it.

16         As far as the other facts that they're putting in

17 there, I think if you go back to the answer to the complaint,

18 all the facts that we have leading to integrated enterprise

19 alleging in the complaint they've admitted to except for the

20 legal conclusion that they're an integrated enterprise, I've

21 been in a fair number of hearings regarding integrated

22 enterprise.  I've looked at case law.  I have -- it's a very

23 factual intensive inquiry.  I have yet to find more than --

24 have yet to find a case where the Defendants stipulated to

25 more than one element without stipulating to the fact that

1    they are a single employer.  So I just don't know what that's

2    going to be, but we'll look at it.

3            THE COURT:  Okay.  So, again, when you file your

4    status report on, I believe I said the 27th on the deposition

5    dates, if you-all can let me know on that date as well.  And I

6    believe if they -- if the Defendants stipulate, make a

7    stipulation that you just outlined, would that take care of

8    topics 37, 38 and 39?

9            MR. WOLFMEYER:  When you say "the stipulation", are

10   you talking about the 500 employees or also --

11           THE COURT:  Yes.  And whatever other elements you

12   need for the integrated employer.

13           MR. WOLFMEYER:  Right.  So the corporate structure

14   goes towards a couple different elements of the integrated

15   employer.  But 37 and 39 would be taken care of, could be

16   potentially taken care of there.

17           THE COURT:  Okay.  Okay.  Now, let's go to 38.

18   Without putting words in Mr. Stern's mouth, I think the issue

19   here would be all subsidiaries and affiliated entities.  I

20   think he indicated earlier that that would be hard for them to

21   find one person that could testify to that.  So is there a way

22   to narrow the structure that you need to see that's relevant

23   to this, to the issues in this case?

24           MR. WOLFMEYER:  With regards to number 38?

25           THE COURT:  38, yes.

1          **MR. WOLFMEYER:**  With the stipulation that they have

2    500 or more employees, we could limit the corporate structure

3    to only Community Loans and Carolina Title Loans.  That would

4    take out of the affiliates and subsidiaries.

5          **THE COURT:**  Okay.  So, again, once you get the

6    stipulation, if you can agree to limiting the corporate

7    structure to just, you said Community Title Loans or Community

8    Loans of America and Community Title Loans?

9          **MR. WOLFMEYER:**  I'm sorry.  Carolina Title Loans and

10   Community Loans, or just both defendants?

11         **THE COURT:**  Both defendants.

12         **MR. WOLFMEYER:**  Yeah.

13         **THE COURT:**  Is that agreeable?

14         **MR. STERN:**  Yes, Your Honor.

15         **THE COURT:**  Okay.  So you-all just let me know in

16   the status report that you do on the 27th.

17         Okay.  Now to 41.  I just thought that was -- this

18   one is very broad.  Contracts held with Community Loans of

19   America.  Like all contracts?  I mean, contracts with the

20   cleaning lady, contracts with -- like, which contracts?

21         **MR. WOLFMEYER:**  So, we've since narrowed it to the

22   following, Your Honor.  I'll read it for you in the record:

23   Service contracts, consulting contracts, building contracts,

24   human resources contracts, and payroll contracts held with the

25   Community Loans of America.

1      Just all of those contracts go towards the case law

2  where they're finding integration -- excuse me, interrelation

3  of operations, which is an element of the integrated

4  enterprise.

5      THE COURT:  Okay.  And this one would not be

6  resolved by the stipulation?

7      MR. WOLFMEYER:  If there was a -- to be honest, if

8  the stipulation was that they were a single employer, all of

9  these would be resolved.  I don't know what facts -- I mean,

10 potentially there's always facts that would resolve this

11 situation.  We can work on those facts with the Defendants,

12 and we're happy to do so.

13      MR. STERN:  Your Honor, that question I guess you

14 know your inquiry with the janitor and custodians contract,

15 service contracts, that would probably still apply there.  I

16 mean, even with the narrowing to service contracts, payroll

17 contracts, there's -- we don't have someone who can talk to

18 every single contract that the company has which is still, I

19 think, included basically in their list there.

20      THE COURT:  Okay.  I either read or heard someone

21 say earlier that Community Loans of America provides kind of

22 like the management services for Title Loans, so provides

23 their payroll, provides their HR, provides -- was that you,

24 Mr. Moody?

25      MR. STERN:  Your Honor, that was me, and that is a

1   component of our proposed joint stipulation to them.

2          THE COURT:  Okay.

3          MR. WOLFMEYER:  So we're evaluating that.  I will

4   say two things on that.  One, that does seem to cover for the

5   most part the shared labor relations, the integration of

6   operations.  There's a really instrumental case, and we're

7   happy to brief this if you want, but, and it's about a horse

8   farm, and it's called the *EEOC versus Alfred*.  It's a Fourth

9   Circuit case.  And in that case they literally go down to

10  who's paying for the horses.  Is money being exchanged.  Are

11  these armorance (sic) agreements.  All of these things are

12  integrated and goes towards interrelation of operations.

13         THE COURT:  Okay.  I guess what I'm trying to figure

14  out is if the stipulation that they were trying to offer

15  earlier, if there are any elements that could be added to the

16  stipulation that they would agree to, that would resolve this

17  issue.

18         MR. WOLFMEYER:  And I'm sympathetic toward that.

19  And to be honest, if there's a certain stipulation that we can

20  get, again, this is such a fact intensive inquiry to stand up

21  on, you know, purposes of judgment in this case, and also

22  potentially purposes of an appeal that we need, you know,

23  facts in the record, obviously.  The easiest thing, again,

24  would be just to stipulate to that element, integration of --

25  interrelation of operations.  But, you know, potentially

1  there's facts that we could at some point reach an agreement

2  where, you know, that would constitute that element.  I guess

3  what we're being cautious about is if we do file a motion for

4  summary judgment on the issue, if we have enough facts in the

5  record to, you know, withstand scrutiny and also to get a

6  judgment on.

7          **THE COURT:**  Okay.

8          **MR. STERN:**  Your Honor, I would just say that the

9  issue that I think I can kind of see just arising is that, you

10  know, we stipulate to each element and they say, that's not

11  good enough.  And then they're saying we still need to go into

12  these topics.  I mean, we've -- you know, as your question is,

13  if we stipulate that CLA does all these different things for

14  Carolina Title Loans, does that eliminate the -- is that the

15  41st topic?  And the answer -- and our position would be, it

16  does.  And if they want to say that we don't think it does

17  therefore then the topic becomes relevant, my just hope is

18  that we can I guess not necessarily meet again but just have

19  the opportunity to say, you know, this is to satisfy each one

20  of these elements.  And if they need additional facts, then

21  they can tell us what facts they may need, and we can try to

22  stipulate to those.  But as written, I mean, I went through

23  the elements and just stipulated to them.

24          **MR. WOLFMEYER:**  Okay.  And so if we had all four

25  elements stipulated in the Fourth Circuit, that would be

1  sufficient.  But we have not gotten that offer yet.

2          THE COURT:  Okay.  Well, we're going to add

3  number 41 to your status report.

4          Let's go to 43.  I could guess as to why you're

5  asking this question, but I will let you tell me.

6          MR. WOLFMEYER:  So, I'll read to you what we

7  narrowed the topic down to.  So as of this time it says:  The

8  signatories in terms of the lease for the building and/or lot

9  located at 1295 South Pleasantburg Drive, Suite A, Greenville,

10  South Carolina, 29605 during the time period of October 1st

11  2019 and November 25th, 2019.

12          That is what we're looking for.  Again, it goes

13  towards integrated enterprise, looking to see who's on the

14  lease, who's paying for the lease, that type of thing.

15          THE COURT:  Okay.  So is that a 30(b)(6) topic or is

16  that a discovery request?  Can they just provide you the

17  lease, a copy of the lease?

18          MR. WOLFMEYER:  That would be sufficient.

19          THE COURT:  Okay.  So are you-all willing -- I don't

20  want to hear later that he can't ask you to provide it because

21  discovery deadline passed.  Are you willing to provide that?

22          MR. STERN:  Your Honor, I'll ask the client to

23  provide the lease.

24          THE COURT:  Okay.

25          MR. STERN:  It was years ago.  I would hope they

1    still have a copy of that lease.  But I don't see that being

2    an issue.

3              **THE COURT:**  Okay.  So you-all let me know.

4              **MR. WOLFMEYER:**  We will.  We'll include that in the

5    status report for you as well.

6              **THE COURT:**  Okay.  Now to 42.  This is for the

7    Defendants.  I'm curious about your objection because I know

8    in the complaint they did ask for punitive damages.  And I

9    believe Section 1981(b) allows the recovery of punitive

10   damages.  So if you can explain to me why this information

11   would be irrelevant.  You're saying their claim for punitive

12   damages isn't viable.

13             **MR. STERN:**  Your Honor, we believe that the claim

14   isn't viable and therefore irrelevant.  That, you know, just

15   simply filing a case against a defendant does not, I guess,

16   allow you to get into sensitive financial information.  And I

17   think that that's what happened here.  And I think the case

18   law supports there has to be at least a prima facia case of

19   punitive damages to allow for, you know, an inquiry into

20   financial information.  So that would be our position.

21             This is just not a punitive damages case.  We don't

22   think extensive sensitive financial information is relevant at

23   this time.  But, Your Honor, as I've worked out with parties

24   before when it becomes relevant, you know, and certainly like

25   a bifurcated trial or anything -- kind of like, you know, I'm

1   not saying that that data will also be irrelevant in every

2   single case, but just that it's just currently not relevant in

3   this case.

4           **THE COURT:**  So is there some case law that says that

5   they can't ask for this until they've passed summary judgment?

6           **MR. STERN:**  It actually doesn't say -- you know, the

7   Courts have been very wary of when it becomes relevant or

8   what's showing that the Plaintiffs have to make.  And I think

9   it's like *Nix versus Holbrook* I think is one of the cases that

10  discusses that.  But it just says, you know, the general

11  premise that asking for punitive damages in the complaint does

12  not grant you the ability to get sensitive financial

13  information from a company or an individual in a case.

14          **MR. WOLFMEYER:**  So, if I could briefly respond, Your

15  Honor.  We're not interested in pouring over stock sheets and

16  ownership.  This is relevant for punitive damages.  Defendants

17  have given us a case, a personal injury case that does say in

18  South Carolina there's no controlling Fourth Circuit appellate

19  case.  But in South Carolina District Courts they do require a

20  prima facie case.  The case also says that because at the time

21  those -- where that case was in discovery, it wasn't near the

22  end of discovery.  They could get it in other ways.  At this

23  point if deadline -- the discovery -- excuse me.  If the

24  discovery deadline is extended it's possible we could get that

25  in other ways.  But we have pled punitive damages.  As

1    opposing counsel stated, most of these stores operated with

2    two people.  We have an African-American woman who was

3    repeatedly called the N word in a store.

4             **MR. STERN:**  Your Honor, that is not the allegations

5    in this case.

6             **THE COURT:**  I've read the complaint.

7             **MR. STERN:**  Okay.  Well, that's --

8             **MR. WOLFMEYER:**  So we believe that punitive damages

9    are appropriate.

10            **THE COURT:**  Okay.  So, help me with this.  I have

11   not read the case law, and my employee expert over here, I

12   have not asked her the question.  So to show a prima facie

13   case is it I guess just pleading it is not sufficient?  Does

14   that mean you go through discovery and then you ask for this

15   information?  You-all tell me how this works.

16            **MR. WOLFMEYER:**  So, I'll tell you what I've found in

17   some pretty extensive research, is that there's no definitive

18   standard of when it's appropriate.  There is case law that

19   says you do not have to wait until the summary judgment stage.

20   The cases that have denied it have typically come earlier in

21   the discovery process.  In the prima facie case as far as, you

22   know, whether you want to have a hearing on it, whether you

23   want to brief, but we feel we have that for information

24   through the depositions we've already taken.

25            **THE COURT:**  Okay.  I think I probably need some

1    briefing on topic 42.

2            **MR. WOLFMEYER:**  Okay.

3            **THE COURT:**  So, I guess you won't be able to set a

4    deposition on topic 42 until you-all brief that to me and then

5    we have a chance to look at it and decide whether you can get

6    that information now or have to wait until some later time.

7            **MR. WOLFMEYER:**  Thank you, Your Honor.

8            **THE COURT:**  Okay.  When do you-all want to provide

9    that?  I hate to make everything due on the 27th.

10           **MR. WOLFMEYER:**  Whatever you need, Your Honor, we'll

11   make it happen.

12           **THE COURT:**  Well, you-all tell me when you can have

13   it.  I mean, you-all might have it done already, can give it

14   to us tomorrow.

15           **MR. MOODY:**  Your Honor, I don't take many vacations,

16   but I'm going to Louisville this weekend because I have really

17   good friends.  So I would like not to stack up the 27th and

18   the 30th on this.  Maybe put this into April just a tad bit.

19   That would help me.

20           **MR. WOLFMEYER:**  We're agreeable with that for the

21   reason, I mean, we do want you to enjoy your vacation, but

22   also we need transcripts from recently available depositions

23   that should be there by then.

24           **THE COURT:**  Okay.

25           **MR. STERN:**  Datewise I think mid April, I think.

1           THE COURT:  Well, I tell you what --

2           MR. STERN:  To make sure -- we took a deposition

3    last Thursday that we would also need for purposes.

4           THE COURT:  In your status report for the 27th you

5    let me know what date you'd like to provide briefing in on

6    topic 42.  And Ms. Littlejohn, you're in charge to keep

7    everybody --

8           MS. LITTLEJOHN:  I'm in Greenville, South Carolina.

9    My office is up the street.  I live around the corner.  I'm as

10   local as local can get.  I'm happy to go meet with these

11   gentleman.  I actually know Mr. Stern quite well.  So we have

12   a good relationship.

13          THE COURT:  Okay.  And I'm just joking with you.

14          MS. LITTLEJOHN:  I know.  I know.  I just want to

15   make sure it's clear.

16          THE COURT:  Yes.  Okay.  Is there anything else?

17          Can you-all let us know by the end of the day on

18   Thursday what you'd like your discovery -- what your discovery

19   deadline needs to be.  I think right now you have it pushed

20   out two months, is that accurate?  Which you may need more

21   time to give us time to rule on all of the topics and kind of

22   get you-all through this.  So, you-all can talk and let us

23   know how much more time you need for discovery and, you know,

24   be realistic with yourselves.  Don't say you need two months

25   if you know you're going to need four.

1           **MR. STERN:**  Yes, Your Honor.

2           **THE COURT:**  And then we will create the scheduling

3    order from there.

4           **MR. WOLFMEYER:**  Thank you, Your Honor.  This was

5    helpful.

6           **THE COURT:**  Okay.  Anything further?

7           **MR. WOLFMEYER:**  Nothing further from Plaintiff.

8           **THE COURT:**  Anything further?

9           **MR. MOODY:**  Nothing further.  Thank you, Your Honor.

10          **THE COURT:**  And if we need to have another status

11   conference just do the same thing, maybe just file a motion

12   for a status conference.  That way the clerk's office knows to

13   kind of set a date and me for a date.

14          **MR. WOLFMEYER:**  Thank you, Your Honor.

15          **THE COURT:**  Thank you all.

16        (Court adjourned at 11:23 a.m.)

17

18                        CERTIFICATE

19     I,  Michele E. Becker, certify that the foregoing is

20       a correct transcript from the record of proceedings

21       in the above-entitled matter.

22

23   /s/  Michele E. Becker            Date:  04/10/2023

24

25


                     Michele Becker, RMR, CRR, RPR
                          US District Court
                      District of South Carolina